UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DARRELL HARGROVE,<br>Defendant. | Case No. 13-cr-00274-YGR-1 (KAW)<br><br>**CORRECTED ORDER GRANTING DEFENDANT'S MOTION FOR TEMPORARY RELEASE** |

A renewed detention hearing regarding the release of Defendant Darrell Hargrove was held on April 10, 2020 based on changed circumstances arising out of the Covid-19 pandemic. Hargrove was convicted of one count of possession of cocaine, with intent to distribute. On January 22, 2019, a petition alleging violations of his supervised release conditions was filed, and on February 12, 2020, the court ordered Mr. Hargrove detained, finding that he failed to meet his burden to show by clear and convincing evidence that he was not a flight risk or danger to the community. (Dkt. No. 43.)

Mr. Hargrove moved to re-open the detention hearing, under 18 U.S.C. § 3142(i), for temporary release from custody. On April 10, 2020, the Court found that compelling reasons existed for Hargrove's temporary release from custody and ordered that he be temporarily released to additional conditions. (Dkt. No. 58.) In the Court's effort to timely issue the order, however, the Court applied the wrong standard; 18 U.S.C. § 3143 governs post-conviction release or detention. Applying this standard, the Court FINDS that Hargrove has established by clear and convincing evidence that he is not a flight risk nor a danger to the community.[1] Accordingly, the

---

[1] It does not appear the Government argues that Plaintiff's detention is mandatory per § 3143(a)(2). (*See* Dkt. No. 57 at 9.) Even if § 3143(a)(2) applied, the Court would find that

Court ORDERS Hargrove to be temporarily released subject to the additional conditions detailed at the end of this order, which includes 24-hour home detention and electronic location monitoring as administered by the Probation Department.

Mr. Hargrove is detained at Santa Rita County Jail, an Alameda County facility in Dublin, California, under contract with the United States Marshals Service. This "mega jail" is the third largest facility in California and the fifth largest in the nation. (*See Babu et al. v. Ahern et al.*, Case No. 18-cv-07677-NC, Dkt. No. 61.) It houses inmates in all classification levels including federal detainees. *Id*. Over 29,000 inmates are booked into Santa Rita each year. (*Id*.) As of April 9, 2020, Santa Rita houses 1,979 inmates. (*See Covid-19 Updates*, ALAMEDA COUNTY SHERIFF'S OFFICE, (April 13, 2020 at1:24 p.m.), https://www.alamedacountysheriff.org/admin_covid19.php.)[2]

As of April 12, 2020, fifteen inmates at Santa Rita Jail have tested positive for COVID-19. (*See Covid-19 Updates*.) Twenty-one inmates are currently categorized as "red," meaning that they are "displaying symptoms consistent with COVID-19." (*Id*.) Fifty-one inmates are categorized as "orange," meaning that they are "considered at increased risk for COVID-19 complications (pregnant, older than 65, chronic medical conditions)." (*Id*.) Eight housing units consisting of twelve total pods are categorized as "yellow," meaning that have had contact with known or suspected COVID-19 and therefore are placed under 14-day quarantine. (*Id*.) Santa Rita has conducted 58 tests for the virus: 40 were negative, 15 were positive, and 3 await results. (*Id*.) A nurse assigned to the jail, as well as a second staff member, have tested positive for COVID-19. (*Id*.; *see also* Angela Ruggiero, *Alameda County Jail Reports Nurse has Tested Positive for Coronavirus*, MERCURY NEWS (Mar. 27, 2020, 5:09 AM), https://www.mercurynews.com/2020/03/26/alameda-county-jail-reports-first-coronaviruscase-a-nurse/.

---

Plaintiff should still be released per § 3145(c), as Hargrove's unusually high risk to COVID-19 due to his underlying health conditions is an exceptional reason why detention is no longer appropriate.

[2] These facts/statistics are taken directly from the release order issued by the Honorable Judge Cousins in 19-cr-00709-LHK, and the statistics have been verified as current through today.

2

18 U.S.C. § 3143(a) mandates detention unless the Court "finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ." Hargrove argues that the COVID-19 pandemic constitutes a compelling reason for his release. He contends that his health conditions, which include obesity and severe asthma, render him at risk for serious complications should he contract COVID-19. The court agrees.

Specifically, Mr. Hargrove has been struggling with chronic asthma since his incarceration. He uses an inhaler while in custody, and when he was out of custody, he had an additional oxygen treatment every three months to open his lungs. He contracted pneumonia while in custody in December 2019, and in January 2020, he lost consciousness, fell and injured his head, due to asthma. He was placed in a special quarantine unit because of his symptoms, and although he tested negative for Covid-19, he remains at risk due to exposure to others in the jail. He was also diagnosed with persistent bronchitis. Mr. Hargrove also suffers from obesity – being 6'6" tall and weighing 350 pounds.

Due to the novel coronavirus pandemic, the country is in "extraordinary times." *In re Extradition of Alejandro Toledo Manrique*, Case No. 19-mc-71055-TSH, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020). This is a global crisis with exponentially increasing infections and hundreds of thousands of deaths. The President of the United States has declared a National Emergency. (*See* Proclamation No. 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020).) Community transmission of the virus is widespread in the State of California, which has one of the largest numbers of confirmed cases in the country. *See Cases in U.S.*, CENTER FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html. California Governor Gavin Newsom has issued an Executive Order declaring a State of Emergency and directing all Californians to stay home to minimize public interaction. (*See* Executive Order N-33-20, Exec. Dep't State of Cal. (Mar. 19, 2020), *available at* https://covid19.ca.gov/img/N-33-20.pdf.) Counties in the San Francisco Bay Area have instituted and extended shelter-in-place orders requiring social distancing; local schools and businesses are closed.

Our Court has since closed three of its four courthouses, vacated criminal and civil trials, suspended grand jury proceedings, restricted in-person use of its facilities, and limited its operations. (*See* General Order 72 (N.D. Cal. Mar. 16, 2020); General Order 73 (N.D. Cal. Mar. 16, 2020), *amended on* Apr. 2, 2020, *available at* https://www.cand.uscourts.gov/rules/generalorders/.) These restrictions aim to follow guidance from the Centers for Disease Control and Prevention ("CDC") recommending frequent hand-washing, avoiding close contact with other people, cleaning and disinfecting frequently-touched items and surfaces as much as possible, and avoiding groups of more than 10 people. (*See How to Protect Yourself & Others*, CENTER FOR DISEASE CONTROL AND PREVENTION, (Apr. 8, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.)

As is now clear, the COVID-19 pandemic has reached U.S. jails and prisons. (*See, e.g.,* Timothy Williams, *et al.*, *'Jails are Petri Dishes'*, NEW YORK TIMES (Mar. 31, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html (noting -- as of March 30, 2020—over one hundred positive tests for coronavirus at Cook County jail in Chicago, almost 80 positive tests in Michigan prisons, nearly 200 cases at Rikers Island jail complex in New York, and almost forty cases in federal prisons including one death at the Bureau of Prison's Oakdale, Louisiana facility); *see also United States v. Garlock*, Case No. 18-cr-00418-VC, 2020 WL 1439980, at *1 ("The chaos has already begun inside federal prisons—inmates and prison employees are starting to test positive for the virus, quarantines are being instituted, visits from outsiders have been suspended, and inmate movement is being restricted even more than usual") (citing Zusha Elinson *et al.*, *Jails Release Prisoners, Fearing Coronavirus Outbreak*, THE WALL STREET JOURNAL (Mar. 22, 2020, 10:00 AM), https://www.wsj.com/articles/jails-release-prisoners-fearing-coronavirus-outbreak-11584885600).) The Court takes notice of the information presented by the United States Bureau of Prisons at www.BOP.gov under its COVID-19 response tab. As of April 9, BOP reported 283 inmates and 125 staff diagnosed with the virus and 8 inmate deaths.

At the hearing, the Government, after reviewing Hargrove's medical records, did not dispute that Hargrove's custodial situation puts him at a meaningfully higher risk of contracting

4

COVID-19. Indeed, jails and prisons present extraordinarily dangerous conditions for the spread of the virus. (*See United States v. Stephens*, 2020 WL 1295155 (citing Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infections Diseases 1047 (Oct. 2007)), which found that the "probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise"); *see also Xochihua-Jaimes v. Barr*, Case No. 18-cv-71560 (9th Cir. Mar. 24, 2020) (stating that "public health authorities predict" the "rapidly escalating public health crisis" "will especially impact immigration detention centers").) "Social distancing and proper hygiene are the *only* effective means by which we can stop the spread of COVID-19"—and in no place is ensuring these means more "difficult, if not impossible," than in detention centers. *Thakker v. Doll*, Case No. 20-cv-480-JEJ, Dkt. No. 47 at 21 (M.D. Pa. Mar. 31, 2020); *United States v. Gorbman*, Case No. 18-cr-20989, Dkt. No. 397 (S.D. Fla. Mar. 29, 2020).

Dr. Brie Williams, Professor of Medicine at UCSF with expertise in health issues affecting prisons, recently opined that "[b]ecause inmates live in close quarters, there is an extraordinarily high risk of accelerated transmission of COVD-19 within jails and prisons." *See United States v. McCoy*, Case No. 19-cr-00067-JD, Dkt. No. 94, Ex. 2 (Affidavit of Brie Williams, M.D.) at 3. Dr. Williams states that because "[i]nmates share small cells, eat together and use the same bathrooms and sinks," "social distancing in most facilities [is] virtually impossible . . . compounded by inadequate sanitation, such as a lack of hand sanitizer or sufficient opportunities to wash hands." *Id*.

Mr. Hargrove argues that his health conditions render him particularly susceptible to serious complications should he contract COVID-19. In particular, the CDC has concluded that individuals with severe obesity and moderate to severe asthma may be "at higher risk for severe illness from COVID-19." (*Groups at Higher Risk for Severe Illness*, CENTER FOR DISEASE CONTROL AND PREVENTION (Apr. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higherrisk.html.) The necessarily close quarters and limited hygienic options for inmates of the Jail increases their risk of infection, which in turn risks the wellbeing of jail staff, their families, and the general community. Other courts and government officials have

5

recognized that inmates are at particular risk for contracting COVID-19. Alameda County officials, for example, have released over 200 inmates from Santa Rita and the total Santa Rita inmate population has been decreased by more than 500 since March 1. (*See* Megan Cassidy, *Alameda County Releases 250 Jail Inmates Amid Coronavirus Concerns, SF to Release 26*, SAN FRANCISCO CHRONICLE (Mar. 20, 2020, 11:21 PM), https://www.sfchronicle.com/crime/article/Alameda-County-releases-250-jail-inmates-amid-15147332.php. *See also*, Alene Tchekmedyian, *et al.*, *L.A. County Releasing Some Inmates from Jail to Combat Coronavirus*, LOS ANGELES TIMES (Mar. 16, 2020, 7:25 PM), https://www.latimes.com/california/story/2020-03-16/la-jail-population-arrests-down-amid-coronavirus (Los Angeles County jail population reduced by 600 individuals over two weeks); Aprile Rickert, *Officials Thin Jail Population to Prevent Spread of COVID-19*, NEWS AND TRIBUNE (Mar. 23, 2020), https://www.newsandtribune.com/news/officialsthin-jail-population-to-prevent-spread-of-covid/article_b3899a6c-6ad8-11ea-8fea-072a24324cc4.html (Indiana counties reduce jail populations to ensure further distance between inmates); Letter to Montana Courts of Limited Jurisdiction Judges (Mont. Sup. Ct. Mar. 20, 2020), available at https://courts.mt.gov/Portals/189/virus/Ltr%20to%20COLJ%20Judges%20re%20COVID-19%20032020.pdf (Chief Justice of Montana Supreme Court instructing judges to "release, without bond, as many prisoners as you are able" because "due to the confines of [correctional] facilities, it will be virtually impossible to contain the spread of the virus").)

The Court FINDS that the unprecedented, extremely serious health risk posed by continued detention, exacerbated by Hargrove's health conditions, affects the Court's consideration of whether Hargrove constitutes a risk of flight and danger to the community. Although the Court previously found that Hargrove constituted a risk of flight and danger to the community, the COVID-19 pandemic and the reported infections at Santa Rita Jail changes the calculus. Hargrove now has serious, potentially life-threatening incentives to obey the conditions of his release. Not only will Hargrove be incentivized to comply with the conditions of his release to temporarily remain out of jail, Hargrove is further incentivized to remain in place and avoid social contact lest he contracts COVID-19. These changed conditions mitigate Hargrove's risk of flight and danger,

such that the Court can find that Hargrove is no longer a risk of flight or danger to the community.

For these reasons, the Court ORDERS Hargrove temporarily released into the custody of his wife, Edie Hargrove, pursuant to 18 U.S.C. § 3143 under the following conditions:

- Hargrove is subject to 24-hour home incarceration to be enforced by location monitoring technology to be determined by Probation. Hargrove may leave the residence only for necessary medical services with the prior approval of Probation. He may not change his residence without advance approval of Probation.
- Hargrove shall be remanded back into custody on June 9 (which is 60 days from the Court's previous order), subject to extension by further Court order. Pretrial Services must make a recommendation to the Court by June 2 as to whether the time period of temporary release should be extended.
- Hargrove must maintain video and telephone conferencing capabilities to allow for remote or virtual monitoring by Probation.
- Hargrove must report and disclose to Pretrial Services when any cohabitant, including himself, exhibits any symptom of any illness.
- Hargrove must comply with the Shelter-in-Place order issued by California Governor Gavin Newsom, dated March 19, 2020, and any further extensions of that order. *See* Executive Order N-33-20, Exec. Dep't State of Cal. (Mar. 19, 2020).

The Court sets a further telephonic conference for **April 24, 2020, at 1:30 p.m.** to determine whether any additional conditions of release, or modifications, are appropriate.

This temporary release order is effective immediately and will be communicated to the USMS, Santa Rita Jail, and Pretrial Services.

IT IS SO ORDERED.

Dated: April 13, 2020

_____
KANDIS A. WESTMORE
United States Magistrate Judge